O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| IN RE: SOUTHERN CALIFORNIA SUNBELT DEVELOPER'S INC. TRAILS END LIMITED PARTNERSHIP, SHOWTHUNDER INC., HAMPTON LIMITED, et al., Plaintiff, v. SOUTHERN CALIFORNIA SUNBELT DEVELOPERS, INC., Defendant. | ) | Case No. SACV 06-00270 DDP [USBC No. SA02-10617 RA] **ORDER AFFIRMING OPINION OF THE BANKRUPTCY COURT** [Notice of Appeal filed March 13, 2006] |

This is an appeal from an order of the bankruptcy court granting judgment for attorneys' fees, costs, and punitive damages in favor of Appellees.[1] Appellants are 13 entities - and two individuals (David Tedder and Don Grammer) who control them - who filed involuntary petitions in bankruptcy against Southern

cc: US Bankruptcy Court & US Trustee's Office

[1] This case has been consolidated for purposes of briefing and argument with SACV 06-00269. Accordingly, an identical order has been issued in that case.

California Sunbelt Developers, Inc. ("SCSD") and IBT International, Inc. ("IBT"). After the two involuntary petitions were dismissed, SCSD and IBT each sought attorneys' fees, costs, and punitive damages under section 303(i) of the Bankruptcy Code, which allows a former alleged debtor to recover attorneys's fees and costs against petitioning creditors who file an unsuccessful involuntary petition, and damages and punitive damages where the involuntary petition was filed in bad faith. After a month-long trial, the bankruptcy court awarded attorneys' fees and costs in favor of SCSD and IBT and against the petitioning creditors. The court found that the petitioners had acted in bad faith and ordered punitive damages of $65,000 in each case. The court further found that Tedder and Grammer had acted in bad faith, and sanctioned each in an amount equal to the attorneys' fees and costs awarded. On appeal, this Court has carefully reviewed the materials submitted by the parties, and after considering the arguments therein, hereby AFFIRMS the order of the Bankruptcy Court.

## I. FACTUAL AND PROCEDURAL HISTORY

Appellee IBT is a California corporation whose principal business is to serve as an ownership vehicle for a large tract of undeveloped land in Tehachapi, California, called the "Black Oaks Ranch." Appellee SCSD is a California corporation, also a real estate vehicle, that owns an office campus development near John Wayne Airport called the "John Wayne Executive Guild." Both real estate interests are assets of a joint venture between Appellant Tedder and Mr. Dan Baer.

Appellants are (1) the 13 entities (limited partnerships and corporations) whose money was used by the Baer/Tedder joint venture to buy their real estate investments; and (2) two individuals (Tedder and Grammer) who the bankruptcy court found controlled the non-individual Appellants. The non-individual Appellants are entities that Mr. Tedder formed as part of the investment services that the Baer/Tedder joint venture offered to wealthy individuals. Prior to the involuntary petitions, and pursuant to a settlement agreement, Grammer, the individual who funded three of the entities, took over as general partner, and Tedder relinquished control of those entities.

On January 23, 2002, thirteen petitioning creditors filed two involuntary petitions under section 303 of the Bankruptcy Code seeking to force SCSD and IBT into involuntary bankruptcy proceedings.[2] The thirteen petitioning creditors were identical in the two cases, but the petitions were signed by Mr. Grammer on behalf of three of the creditor entities, and by Mr. Tedder on behalf of the other ten. T. Edward Malpass signed the Petitions for all of the petitioning creditors and represented them as their attorney of record throughout the pendency of the proceedings on the petitions.

At the time of the filing of the involuntary petitions, SCSD and IBT been defending against claims of the petitioning creditors in a California state court action for over six years. The claims of four of the petitioning creditors (Gallery I, Inc., Key

---

[2] Because, as will be discussed, this Court must defer to the factual findings of the bankruptcy court unless they are clearly erroneous, the factual background will be taken from the bankruptcy court’s opinion of February 14, 2006, unless otherwise noted.

Enterprises, Hampton I, and Showthunder, Inc.) had been dismissed by the Superior Court, and that dismissal had been affirmed by the California Court of Appeal. (See Appellees Ex. 6.) The claims asserted by the Tedder entities and the Grammer entities in the California action were the same claims asserted by them in the involuntary petitions. In 2000 and 2001, motions for summary adjudication were filed by both sides, contested, and denied.

In May 2002, five months after the petitions were filed, Mr. John Northen successfully moved to lift the automatic stay triggered by the involuntary petitions in order to permit his continued prosecution of a lawsuit against IBT and SCSD in Florida. In that lawsuit, Northen, the Trustee acting on behalf of the Official Committee of Unsecured Creditors, sought to recover assets that allegedly had been fraudulently transferred to IBT and SCSD ("The Northen Action"). This action ultimately resulted in an opinion by the Eleventh Circuit affirming the judgment of the bankruptcy court which granted judgment in favor of Northen. See In Re Int'l Admin. Servs., Inc., 408 F.3d 689 (11th Cir. 2005).

Back in California, on August 16, 2005, the Superior Court in the state court action appointed a receiver pursuant to California Code of Civil Procedure section 564 to manage the remaining assets of the Tedder/Baer business venture. (Appellants Ex. 23.) On appeal, the California Court of Appeal found that, "given the evidence of the intractable dispute between Baer and Tedder, and the various creditors" involved, the trial court had not abused its discretion in appointing the receiver. (See Appellants Br. Ex. A. at 11.) However, as Appellants note, the state court has

since removed the receiver from day-to-day management of the estate. (Appellants Br. at 14 n.5.)

The bankruptcy court eventually dismissed the involuntary petition against SCSD, and the petition against IBT was then dismissed voluntarily by the petitioning creditors. Following the dismissals, both SCSD and IBT brought motions under section 303(i) seeking recovery of attorneys' fees, costs, and punitive damages. After a 30-day trial, the bankruptcy court awarded attorneys' fees and costs against the petitioning creditors. The court also found that the entities, as well as Tedder and Grammer, had filed the petitions in bad faith, and awarded $65,000 each to IBT and SCSD against the petitioning creditors. The court then sanctioned Tedder and Grammer under its inherent power by making them jointly and severally liable for the fees and costs. It sanctioned attorney Malpass with a formal admonition, and strongly criticized the actions of attorney Dennis Hartmann - who represented Grammer and the entities he controlled in the state court proceedings - but declined to sanction him.

Appellants now appeal the bankruptcy court's rulings on a number of grounds. The Court will address each in turn.

## II. STANDARD OF REVIEW

"The bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed de novo." Higgins v. Vortex Fishing Sys. Inc., 379 F.3d 701, 705 (9th Cir. 2004) (internal quotation marks omitted). Accordingly, the Court "will not disturb a bankruptcy court's award of attorneys' fees

unless the bankruptcy court abused its discretion or erroneously applied the law." Id. (internal quotation marks omitted).

///

**III. DISCUSSION**

Under the Bankruptcy Code, an involuntary petition may only be commenced

> by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $13,475 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims.

11 U.S.C. § 303(b)(1). If the creditors do not satisfy the requirements of § 303(b), the petition will be dismissed. If the bankruptcy court dismisses such a petition

> other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment –
> (1) against the petitioners and in favor of the debtor for-
> (A) costs; or
> (B) a reasonable attorney's fee; or
> (2) against any petitioner that filed the petition in bad faith, for –
> (A) any damages proximately caused by such filing; or
> (B) punitive damages.

Id. § (303)(i).

A dismissal under § 303(b) "raises a rebuttable presumption that reasonable fees and costs are authorized." Vortex, 379 F.3d at 707. The party that filed the involuntary petition bears the burden of rebutting that presumption by "establish[ing], under the totality of the circumstances, that factors exist which . . . support the disallowance of fees." Id. (internal quotation marks

omitted). Courts may consider, "where relevant," the following, unexhaustive list of factors:

> 1) the merits of the involuntary petition"; 2) the role of any improper conduct on the part of the alleged debtor; 3) the reasonableness of the actions taken by the petitioning creditors; and 4) the motivation and objectives behind filing the petition.

Id. (internal quotation marks omitted).

In this case, the bankruptcy court dismissed the involuntary petitions under § 303(b), finding that the claims were the subject of a bona fide dispute and that the petitioners had no basis to think that they satisfied the statutory prerequisites for filing, and then awarded attorneys' fees, costs, and punitive damages under § 303(i). The appropriateness of the award under § 303(i) is the subject of this appeal.

**A. The Bankruptcy Court Did Not Err By Failing to Defer to the Judgments of the California courts or the Eleventh Circuit**

Appellants argue that the Bankruptcy court misapplied the Ninth Circuit's "totality of the circumstances test" by ignoring the "adverse determinations to IBT and SCSD in other courts." (Appellants Br. 22.) Specifically, Appellants argue that these "adverse determinations" demonstrated the "good faith of the petitioning creditors" and revealed the "improper conduct by the alleged Debtor," which should have convinced the court not to award fees. This Court rejects this argument.

The bankruptcy court did not err in declining to rely on the other court cases because, as far as the Court can discern, those other cases did not include factual findings that are directly on point. Appellants have made sweeping generalizations about the nature of these holdings with few citations to the record, and it

is not the function of this Court to search for a needle in a haystack. Further, as Appellees point out, to the extent Appellants have cited to these so-called "adverse determinations," they have mischaracterized them.

For example, Appellants assert that the trustee in the Eleventh Circuit case was acting on behalf of "an investment vehicle [which is] . . . indistinguishable from the Grammer Appellants." (Appellants Br. at 23.) Appellants provide no citation for this proposition, and the Eleventh Circuit nowhere refers to the Grammer Appellants, noting only that the trustee was a "stock trustee . . . acting on behalf of the Official Committee of Unsecured Creditors." 408 F.3d at 698.

Similarly, Appellants claim that the Eleventh Circuit held that "Mr. Baer, IBT, and SCSD were collectively the 'controlling entity' orchestrating (with Mr. Tedder's assistance) a massive fraudulent conveyance scheme." (Appellants Br. at 23.) The Court can find no such statement in the opinion. The court held that "[t]he evidence at trial established that Tedder and Givens orchestrated an elaborate operation that filtered money directly from IAS to IBT and SCSD." 408 F.3d at 702. The opinion does not state that Mr. Baer, IBT or SCSD were directly involved in orchestrating the scheme, but only that "Baer knew that . . . funding [for the investments] originated with IAS and Givens[,]" and that IBT and SCSD were liable as "controlling entit[ies]" of the transferred property. Id. at 703, 707. In other words, the Eleventh Circuit held that Baer, IBT, and SCSD had at least some knowledge of Givens and Tedder's illicit dealings, but there is no specific holding as to bad faith that would have required

deference by the bankruptcy court in determining whether to award fees.

As to the state court decisions, Appellants grandly assert without citation that the decisions found that “Mr. Baer was a corporate looter unfit to be trusted with management of IBT and SCSD.” (Appellants Br. at 23.) The fact alone that Appellants have failed to point to the basis for this statements merits rejecting the argument. In addition, however, the Court has reviewed the state court decision appointing a receiver, as well as the Court of Appeal decision affirming it, and it can find nothing of the tone suggested by Appellants. The order appointing a receiver says nothing about its rationale, and the Court of Appeal appears to have affirmed the appointment of a receiver (who, as noted, is no longer in charge of day-to-day management) because “of the intractable dispute between Baer and Tedder,” not because Mr. Baer was a corporate looter. (Appellants Br. Ex. A, at 11.) Appellants have pointed to nothing in the record to suggest that the bankruptcy court committed legal error by failing to “give deference” to the findings in the California and Eleventh Circuit opinions. In fact, it is not even clear which findings Appellants believe deserved deference.

Further, contrary to Appellants’ suggestion, the bankruptcy court did consider the Eleventh Circuit’s opinion, but found, nonetheless, under the totality of the circumstances, including the factors listed by the Ninth Circuit, that costs and fees were warranted. In fact, the court found that the Eleventh Circuit’s opinion weighed in favor of awarding costs and fees because it highlighted the bad faith of the petitioners, not the debtors.

(Appellees Ex. 1 at 37.) The bankruptcy court also considered the California Superior Court action, and determined that decision highlighted the bad faith of petitioners in filing the petitions as well. (Id. at 36.) The court did not consider the California Court of Appeal affirming the receiver appointment, but that is because the order was issued one year after that bankruptcy court issued its decision awarding costs. Under these circumstances, this Court finds that the bankruptcy court applied the correct law. Accordingly, the Court rejects Appellants' argument.[3]

**B. Costs and Fees Incurred in Litigating a Request for Fees Are Recoverable**

Appellants next argue that the bankruptcy court erred in awarding the fees and costs incurred in litigating the entitlement to fees under 11 U.S.C. § 303(i). As this is an undecided issue in the Ninth Circuit, this Court has given Appellants' argument careful consideration, but has concluded that the bankruptcy court

---

[3] Appellants also contend that the bankruptcy court erred by holding a full evidentiary hearing on the § 303(i) motion because the Ninth Circuit has admonished against full hearings in this context. (Appellants Br. 21-22.) The Court disagrees. First, the Ninth Circuit never forbade full hearings; rather, it has held that the rebuttable presumption of an award is designed to aid in judicial efficiency so that if the court has heard "all the evidence surrounding dismissal" it need not be "burden[ed]" by "conducting another mini-trial." Vortex, 379 F.3d at 707. In this case, however, the court had not heard all the evidence. It needed to hear evidence of bad faith in order to determine whether punitive damages were appropriate. (See Appellees Ex. 11 at 507.) Second, Vortex, the case that Appellants rely on to argue that a full evidentiary hearing was improper, was not decided until August 11, 2004, over a year after the bankruptcy court set the matter for a hearing and after several days of the hearing had already taken place. Third, and most importantly, Appellants themselves at the time urged the court to allow a full hearing, arguing that this was a "difficult matter with a lot of money at stake" which "both warrants and probably compels a full hearing with the ability to present testimony." (Id. at 503:1-3.) Under these circumstances, this Court can find no error in the bankruptcy court's decision.

was correct in its determination that it has the authority to award such fees.

Appellants argue that because § 303(i) does not explicitly provide for costs and fees incurred when litigating the § 303(i) motion, such fees should be limited to the costs and fees incurred while litigating the involuntary bankruptcy petition. Appellants use two analogies to urge their construction of the statute. Neither is convincing.

First, Appellants argue that the Supreme Court has held that "the award of prevailing party fees is strictly a matter of legislative fiat and the courts are not to create favored causes of action on policy grounds." (Appellants Br. at 24.) This Court does not quarrel with that proposition. However, it does not extend to the current circumstances. In Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240 (1975), the case relied upon by Appellants, the Supreme Court did indeed recognize "the general 'American rule' that the prevailing party may not recover attorneys' fees as costs or otherwise" except where Congress has "ma[d]e specific and explicit provisions for the allowance of attorneys' fees under selected statutes." Id. at 245, 260. This holding is inapposite here because Alyeska Pipeline dealt with a prevailing party who sought attorneys' fees in the absence of any statutory authority. By contrast, the bankruptcy court awarded costs and fees under 11 U.S.C. § 303(i), which specifically authorizes such awards. The "American rule" relied upon by the Court in Alyeska Pipeline, therefore, is inapplicable.

Instead, the more relevant question is whether, as a matter of statutory construction, § 303(i) authorizes fees incurred while

litigating the sanction motion. When interpreting a statute, courts "look first to the plain language of the statute, construing the provisions of the entire law." Nw. Forest Resource Council v. Glickman, 82 F.3d 825, 831 (9th Cir. 1996) (internal quotation marks omitted).[4]

"It is a fundamental canon of statutory construction that the words of a statue must be read in their context and with a view to their place in the overall statutory scheme." Nat'l Ass'n of Home Builders v. Def. of Wildlife, 127 S. Ct. 2518, 2534 (2007) (internal quotation marks omitted). Here, the text of § 303(i) states that "costs" or "a reasonable attorney's fee" may be awarded, in the court's discretion, when an involuntary petition is dismissed. The general rule in bankruptcy proceedings is that "[t]he court may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides." Fed. R. Bankr. P. 7054. In this context, then, because nothing in § 303(i) or, as far as the Court can determine, any other provision, forbids the award of costs incurred while litigating the sanctions motion, the Court finds that costs are authorized.

The Court further finds that attorneys' fees are authorized as well. Under the canon of statutory construction *noscitur a sociis*, "words grouped in a list should be given related meaning." Dole v. United Steelworkers of Am., 494 U.S. 26, 36 (1990) (internal quotation marks omitted). Accordingly, because "costs"

---

[4] After that, "if the language of the statute is unclear, we look to the legislative history." Id. (internal quotation marks omitted). Here, the statutory construction of § 303(i) favors allowing the award. Neither of the parties have brought any relevant legislative history to the Court's attention.

are authorized at any point in the trial court proceedings, and because nothing in the statute suggests that costs and attorneys' fees should be given different meanings, attorneys' fees, too, are recoverable. See In re Glannon, 245 B.R. 882, 894 (D. Kan. 2000) (noting that, in the context of the entire Bankruptcy Code, § 303(i) should be interpreted to allow costs and attorneys' fees incurred while litigating § 303(i) motions).

Appellants urge that the Ninth Circuit's ruling in Higgins v. Vortex Fishing Systems, Inc., 379 F.3d 701 (9th Cir. 2004), mandates a narrow reading of § 303(i). There, the court held that costs and fees incurred while appealing the bankruptcy court's decision to dismiss an involuntary petition were not recoverable under § 303(i). The Court emphasized, however, that this holding was dictated by the fact that the text of § 303(i) limits its grant of authority to fees incurred at the trial level. As such, courts "should not infer from . . . [the] express discretionary authority to award fees at the trial level a similar authority to award fees at the appellate level." Id. at 708-09 (internal quotation marks and alterations omitted). Instead, parties must invoke Federal Rule of Appellate Procedure 38 to justify such a recovery. Id. at 708. Here, however, Appellees are not seeking costs and fees incurred while litigating an appeal; they seek costs and fees for work done at the trial level, litigating a § 303(i) motion. Appellants read too much into Vortex.

Finally, Appellants analogize § 303(i) to Federal Rule of Civil Procedure 11, and argue that because Rule 11 was not construed to allow for fees incurred while litigating a sanction motion until Congress explicitly amended it for that purpose, §

303(i) requires a similar congressional amendment before any such award of costs and fees will be permissible. See Lockary v. Kayfetz, 974 F.2d 1166, 1177-78 (9th Cir. 1992) (holding that Rule 11 does not authorize fees and costs for litigating sanction motions); see also Margolis v. Ryan, 140 F.3d 850, 854-55 (9th Cir. 1998) (noting that the Lockary rule had been superceded by statute, because a "1993 amendment to Rule 11 specifically allows a district court to include the costs associated with sanctions proceedings").

Important differences between Rule 11 and the Bankruptcy Code leave the Court unconvinced. As discussed, unlike in most other contexts, bankruptcy courts may in general award costs unless a statute provides otherwise. There is therefore a presumption of sorts favoring prevailing party awards that is absent in the Rule 11 context. Indeed, § 303(i) raises a rebuttable presumption of an award, whereas Rule 11 sanctions "should ordinarily be paid into court as a penalty" rather than to the prevailing party. Fed. R. Civ. P. 11 advisory committee's note. Put another way, because of the presumption of an award, the statute, in effect, invites debtors who have successfully defended an involuntary petition to file for compensation under § 303(i). By contrast, Rule 11 sanctions focus on deterrence, not compensation, and, indeed, the Court need not choose a financial sanction at all; it "has available a variety of possible sanctions to impose for violations, such as" striking a document, issuing an admonition or reprimand, requiring participation in a program, or referring the matter to disciplinary authorities. Id. For these reasons, the Court is not persuaded by the Rule 11 analogy, and instead finds

that the bankruptcy court correctly awarded fees and costs incurred while litigating the § 303(i) motion.

///

**C. The Bankruptcy Court Did Not Err in Failing to Reduce the Award for Fees and Costs in Litigating Claims Against Mr. Malpass and Mr. Hartmann**

Appellants next argue that the fee award should be reduced because the bankruptcy court declined to award sanctions against Mr. Malpass and Mr. Hartmann, and because the court failed to perform the proper analysis in determining the reasonableness of fees. The Court disagrees.

Under Hensley v. Eckerhart,

> [w]here the plaintiff has failed to prevail on a claim that is distinct in all respect from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.

461 U.S. 424, 440 (1983). Here, Appellees obtained almost complete success on their claims. They successfully sought attorneys' fees and costs against the 13 petitioning creditors under § 303(i). They successfully sought sanctions and a finding of bad faith against David Tedder and Donald Grammer. They successfully obtained a finding of bad faith against all the petitioning creditors and an award of punitive damages. They successfully sought a finding of bad faith and a formal admonition against Mr. Malpass. The only limits to Appellees' success were that the bankruptcy court 1) declined to sanction Mr. Malpass because of his financial troubles; and 2) chastised, but declined to sanction Mr. Hartmann.

Appellants contend that the matter must be remanded to the bankruptcy court to determine whether the claims against Mr. Hartmann and Mr. Malpass were related to the claims on which Appellees succeeded, and, if the claims were not related, to reduce the fee award accordingly. The Court disagrees. Appellants provide no legitimate rationale for how the claims might not be related. True, Mr. Hartmann and Mr. Malpass were not themselves creditors, but they were the attorneys who litigated the claims of the creditors, so any bad faith attributed to them was directly related to the bad faith in the filing of the involuntary petitions. At best, Appellants have not made a plausible argument that the claims are "distinct in all respects from [the] successful claims," as is required by the United States Supreme Court. Hensley, 461 U.S. at 440 (emphasis added).

Moreover, Appellees' claims against Mr. Malpass and Mr. Hartmann were not entirely unsuccessful. Although the bankruptcy court did not sanction the attorneys, the court issued a formal reprimand against Mr. Malpass and sharply criticized the behavior of Mr. Hartmann. The bankruptcy court followed Hensley and considered the reasonableness of all the fee requests, and indeed denied attorney's fees for that work, such as "the fees incurred in opposing the stay relief motion filed on behalf of Mr. Northen," for which Appellees should bear the "ultimate responsibility." (Appellees Ex. 1 at 33:1-16.) Under these circumstances, the Court sees no reason to disturb the findings of the bankruptcy court.

**D. The Bankruptcy Court Did Not Err in Awarding Punitive Damages**

Appellants provide two bases for their claim that the bankruptcy court erred as a matter of law in awarding punitive damages. This Court rejects them both.

First, Appellants argue that the bankruptcy court erred in finding the improper purpose and malice that is a prerequisite for awarding punitive damages, because it "should have given the State Court findings preclusive effect." (Appellants Br. 27.) As discussed supra, Appellants have failed to cite specifically to any state court findings that would preclude the bankruptcy court's determination, and, for its part, this Court's own review of the state court decisions has failed to uncover these elusive findings either.

Second, Appellants argue that punitive damages are not available in the absence of actual damages, and that, in any case, the punitive damages were excessive here. As to the first contention, Appellants are incorrect. Recent case law, relied upon by Appellants themselves, does not in fact state that punitive damages are impermissible in the absence of actual damages, but rather that there should be a "reasonable relationship between the punitive damages and the actual or likely harm associated with the wrongful conduct," and that the ratio might be quite high "where there are insignificant economic damages but the behavior was particularly egregious."[5] Planned Parenthood of Columbia/Willamette Inc. v. Am. Coalition of Life Activists, 422 F.3d 949, 962 (9th Cir. 2005) (citing as a

---

[5] Berg v. First State Ins. Co., 915 F.2d 460, 467 (9th Cir. 1990), which held that "without actual injury, punitive damages are not recoverable under California law," is inapposite because this case is subject to federal law, not California law.

constitutional example "a punitive damage award with a 37 to 1 ratio of punitive damages to compensatory damages . . . because 'defendant's behavior was outrageous but the compensable harm' was nominal and difficult to quantify"); see also In re Wavelength, 61 B.R. 614, 621 (B.A.P. 9th Cir. 1986) (noting that the "Bankruptcy Code specifically authorizes punitive damages 'even in the absence of or in addition to actual damages'" (quoting In re Adv. Press & Litho, Inc., 46 B.R. 700, 706 (Bankr. D. Colo. 1984))). Moreover, although they may not have sought compensatory damages, Appellees did suffer actual damages in the form of costs and attorney's fees. See, e.g., 11 U.S.C. § 362(k)(1)(stating, in the context of a "willful violation of a[n automatic] stay," that "actual damages" includes "costs and attorneys' fees").

In this case, the bankruptcy court awarded a total of $65,000 in each case, which equals $5,000 per creditor, and attorneys' fees and costs totaling $521,783 to SCSD and $223,535 to IBT. The punitive damage award thus equaled only 12.5% of the fees and costs awarded in the SCSD case, and 29% of those awarded to IBT. Given the bankruptcy court's findings of bad faith and intentional delay, the court was well within its discretion in awarding these damages.

**E. The Bankruptcy Court Did Not Commit Clear Error in Finding Actual Malice Sufficient to Overcome an Advice of Counsel Defense**

Appellants argue that the bankruptcy court had no basis to find the actual malice that would overcome a defense that Appellants relied on the advice of their counsel. Reviewing the bankruptcy court with deference, for clear error, the Court rejects this contention.

Before the bankruptcy court, Appellants argued that they should not be held responsible for filing the involuntary petitions because they relied on the advice of their counsel. However, "reliance upon counsel's advice" will not prove to be a successful defense where there is evidence of malice or ill will. Appellants again rely, without specific citation, on the state court opinion which allegedly "conclusively" shows the bad faith of Appellees, and the good faith of themselves. (Appellants Br. 28.) Even if Appellants' characterization were accurate (which the Court has difficulty in ascertaining without specific citations to the record), more is required to show clear error. The bankruptcy court found malice because, even assuming Appellants' arguments about the state and Eleventh Circuit decisions are correct, nevertheless "the [involuntary] Petitions were filed without any basis known to Mr. Tedder, Mr. Grammer, or the petitioning creditors on whose behalf they signed the Petitions to allege the alleged debtors weren't generally paying their undisputed debts timely." (Appellees Ex. 1 at 39:18-21.) In other words, the petitioners swore they had a basis for knowing certain facts (such as that Appellees were not generally paying their debts on time) when they did not. In the context of the bankruptcy court's finding that Appellants have generally engaged in delay tactics throughout this litigation, this Court cannot say that the findings of bad faith were clearly erroneous.

**F. The Bankruptcy Court Did Not Err in Granting the Motion to Reconsider or Amend**

The Court rejects Appellants' contention that the bankruptcy court erred in amending the judgment. After the decision was issued, SCSD and IBT filed timely motions to amend the judgment

and reconsider the findings on several grounds. Because Judge Alberts had retired, Judge Smith heard this motion. Appellants argue that Judge Smith had no basis to grant the motion to amend, and contest generally the fact that Judge Smith awarded additional fees. However, other than stating broadly that Appellees had no basis to move for amendment, Appellants have provided no details about the fees they contest or the basis for their argument. Under such circumstances, this Court declines to disturb the bankruptcy court's ruling.

**IV. CONCLUSION**

For the foregoing reasons, the opinion of the bankruptcy court is hereby AFFIRMED.

IT IS SO ORDERED.

Dated: August 21, 2008

DEAN D. PREGERSON
United States District Judge