1

2

3                                                              O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11  IN RE: SOUTHERN CALIFORNIA     )  Case No. SACV 06-00270 DDP
    SUNBELT DEVELOPER'S INC.       )  [SA02-10617 RA]
12  TRAILS END LIMITED             )
    PARTNERSHIP, SHOWTHUNDER       )  **ORDER GRANTING IN PART MOTION FOR**
13  INC., HAMPTON LIMITED, et      )  **ATTORNEYS' FEES AND DOUBLE COSTS**
    al.,                           )
14                                 )
                  Plaintiff,       )  [Motion filed on February 5,
15                                 )  2009]
         v.                        )
16                                 )
    SOUTHERN CALIFORNIA SUNBELT    )
17  DEVELOPERS, INC.,              )
                                   )
18                Defendants.      )
                                   )
19  _____   )

20

21  **I. BACKGROUND**

22      On January 23, 2002, thirteen petitioning creditors filed

23  involuntary petitions under Section 303 of the Bankruptcy Code

24  seeking to force IBT International, Inc. ("IBT") and Southern

25  California Sunbelt Developers ("SCSD")(collectively, "Appellees")

26  into involuntary bankruptcy proceedings.  The petitions were signed

27  by two individuals, David Tedder and Donald Grammer, on behalf of

28  the thirteen petitioners.  The bankruptcy court dismissed the

involuntary petitions, and then both IBT and SCSD brought motions under Section 303(i) seeking recovery of attorneys' fees and costs and punitive damages.  The bankruptcy court awarded attorneys' fees and costs and $65,000 in punitive damages against Appellants; and also sanctioned Tedder and Grammer for acting in bad faith (the "Bankruptcy Court Decision").  On August 21, 2008, this Court affirmed the Bankruptcy Court Decision in favor of Appellees (the "August 21 Order").

Following the affirmance of the Bankruptcy Court Decision, Appellees filed another motions for sanctions under Bankruptcy Rule 8020, alleging that the appeal was frivolous.  On November 17, 2008, this Court granted in part Appellees' motion for sanctions (the "November 17 Order").  However, this Court also ordered Appellees to submit a noticed motion to determine what fees and costs were due, based on those issues the Court found to be frivolous.

Appellees have submitted their noticed motion[1] to determine fees, which this Court now considers.

**II.  LEGAL STANDARD**

Under Bankruptcy Rule 8020, if an appeal from an order or judgment is "frivolous," then a court has discretion to award "just damages and single or double costs to the appellee."  Fed. R. Bankruptcy P. 8020.  The calculation of fees and costs under Rule 8020 is distinct from the analysis of reasonable fees and costs

---

[1] Identical briefing has been filed in four cases, which were consolidated into two cases in bankruptcy court and on appeal:  (1) CV 06-00269 (DDP) and CV 06-00270 (DDP); and (2) CV 06-00275 (DDP) and CV 06-00276 (DDP).

awarded to a "prevailing party" by statute, in that damages must
only be "just." Sun-Tek Industries, Inc. v. Kennedy Sky-Lites,
Inc., 865 F.2d 1254, 1255 (Fed. Cir. 1989). Rule 8020 is modeled
after Federal Rule of Appellate Procedure 38, and cases examining
Rule 38 guide the court in determining whether an appeal is
frivolous under Rule 8020. In re Weinstein, 227 B.R. 284, 297 (9th
Cir. BAP 1998) (citing to the Advisory Committee's Notes for Rule
8020). Further, the Ninth Circuit has analogized sanctions under
Rule 38 to those under Federal Rule of Civil Procedure 11. Lyddon
v. Geothermal Properties, 996 F.2d 212, 214 (9th Cir. 1993)("[T]he
principles governing the interpretation of Rule 11 should control
in interpreting Rule 38."). Sanctions awarded by the court must be
sufficiently related or "'directly caused'" by the filing of the
appeal. Id. (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384
(1990)). This excludes, for example, the costs associated with the
filing of the motion for sanctions itself. Id.

Additionally, the trial court must provide adequate
explanation for the appellate court to review an award of fees and
costs, but "a brief explanation of how the court arrived at its
figures will do." Cunningham v. County of Los Angeles, 879 F.2d
481, 484 (9th Cir. 1988); see also In re Yagman, 796 F.2d 1165,
1185 (9th Cir.), amended, 803 F.2d 1085 (9th Cir. 1986)
(finding that a sanctions award must be "quantifiable with some
precision and properly itemized").

**III. DISCUSSION**

A.   Costs and the Motion for Sanctions

3

1   Single costs have already been awarded to Appellees and may
2   not be re-awarded without providing double costs.  The Court
3   declines to award double costs here or to increase the costs which
4   have already been awarded, as not all of Appellants' appeal was
5   frivolous.  Additionally, as noted above, fees and costs may not be
6   awarded for the prosecution of a motion for sanctions, Lyddon, 996
7   F.2d at 214, and the Court will therefore not consider these
8   amounts in its calculation.[2]

9       B.   Motions for Attorneys' Fees

10          1.   Percentage of Fees related to Frivolous

11               Issues on Appeal

13   This Court's November 17 Order only granted Appellees' request
14   for sanctions as to five of the nine issues raised by Appellants on
15   Appeal - issues 1 and 6-9.  (See SCSC Mot. 6.)  Appellees thus seek
16   a sanctions award that represents a portion of the overall appeal.
17   The methodology proposed by Appellees is a breakdown of their brief
18   by percentage of words and pages to determine the proportion of the
19   brief devoted to the frivolous issues.  These calculations produced
20   percentages of "68.6 percent" (7,340 of 10,992 words[3]) and

22      [2] Appellees urge this Court to ignore the decision in Lyddon
    limiting damages to "direct" costs, based on the argument that it
23   is merely an application of the holding in Lockary v. Kayfetz, 974
    F.2d 1166, which has been overturned.  This is incorrect.  The
24   court in Lyddon cited to decisions from the Fifth and Seventh
    Circuit to independently "recognize the similarity between Rule 11
25   and Rule 38 sanctions," which were the primary support for its
    finding that it agreed with "those courts which have concluded that
26   the principles governing the interpretation of Rule 11 should
    control in interpreting Rule 38."  Lyddon, 974 F.2d at 214.

27      [3] This percentage listed by Appellees is actually incorrect,
28   and should be 66.7 percent of the brief based on percentage of
                                              (continued...)

1  approximately 66 percent (23 of 35 pages) devoted to frivolous

2  issues.   In argument, Counsel reduce their estimate and argue that

3  only 63 percent[4] of their brief was devoted to frivolous issues.

4  Upon review of Appellants briefing, the Court agrees that 63

5  percent of Appellants' brief was frivolous.   The Court also finds

6  that, in general, Appellees' method of apportionment provides a

7  reasonable basis for estimating the proportion of time devoted to

8  addressing frivolous issues on appeal.

9          2.   Reasonable Rate

10     Fees "are to be calculated according to the prevailing market

11 rates in the relevant community, regardless of whether plaintiff is

12 represented by private or nonprofit counsel."   Blum v. Stenson, 465

13 U.S. 886, 895 (1984).   The burden is on the fee applicant to

14 produce "satisfactory evidence" of the relevant market rate.   Id.

15 Additionally, the relevant community is defined as "the forum in

16 which the district court sits."   Barjon v. Dalton, 132 F.3d 496,

17 500 (9th Cir. 1997).

18     In their billing statements, Appellees' fees vary between $135

19 and $515 per hour.   Appellants do not provide evidence from the Los

20 Angeles area for these fees, and instead cite to the "Laffey

21 matrix," which calculates the hourly rates used in the Boston and

22 Washington D.C. area.   See Laffey v. Northwest Airlines, Inc., 572

24     [3](...continued)
25 words, not 68.6 percent.

26     [4] Appellees argue that an "upward adjustment" to 70% is
   supported due to the difficulty of the matters here.   The Court
27 declines to make this adjustment.   Again, a sanctions award must be
   "quantifiable with some precision and properly itemized," and the
28 upward adjustment to 70 percent is too speculative to meet this
   standard.   In re Yaqman, 796 F.2d at 1185.

1  F.Supp. 354 (D.D.C. 1983); <u>see also</u> <u>Van Skike v. Dir., OWCP</u>, 557

2  F.3d 1041, 1046 (9th Cir. 2009)(raising but declining to state

3  whether the <u>Laffey</u> matrix is sufficient to establish a market

4  rate).   However, Appellees do not provide direct evidence why the

5  actual rate they request is justified, such as with declarations

6  describing how long Appellees' counsel have practiced law or what

7  hourly rates apply to which length of practice.   To verify the

8  rates locally, SCSD's counsels' hourly rates may only be cross-

9  referenced with IBT's counsels' hourly rates.   Nevertheless, the

10 Court finds that it has sufficient knowledge to verify the rates

11 locally, when compared against the rates provided by the <u>Laffey</u>

12 matrix.   Additionally, Appellants do not dispute the hourly rates

13 of Appellees' counsel.

14            3.   <u>Total Time Spent on Appeal</u>

15      Because, the Court can only consider time actually spent by

16 Appellees' on the appeal, Appellees' fees should be limited to the

17 time period after Appellants filed their opening brief, on May 7,

18 2007, to the period where Appellees' filed their opposition on

19 issuing of this Court's order on August 21, 2008.   The Court will

20 disregard all fees outside this time period.   Accordingly, using

21 Appellees' billing sheets, the total related billing for IBT's

22 counsel during this period is $5,106.   SCSD's counsel's total

23 related billing is $32,079.   Appellants object to a number of

24 Appellees' counsels' billing items, but this essentially amounts to

25 speculation.

26

27      Therefore, SCSD's reduced total of 63 percent of $32,079

28 equals $20,209.   IBT's reduced total of 63 percent of $5,106 equals

$3,216 (IBT).  Accordingly, the total amount due is $23,429.  This amount is in line with awards granted by the Ninth Circuit.  In Lyddon, for example, the Court awarded attorneys' fees in the amount of $25,000, plus double costs and damages, and noted that this amount was "closer in line with the majority of awards granted by the courts of appeals."  Lyddon, 996 F.2d at 215; see also Dohen-Ramirez v. Commodity Futures Trading Comm'n, 846 F.2d 1200 (9th Cir. 1988)(awarding attorney's fees of $10,157.68 and double costs of $233.08).

C.   Joint and Several Liability

Where a frivolous appeal is taken, the Court has inherent power to apply sanctions against client and counsel "jointly and severally."  In re George, 322 F.3d 586, 593 (9th Cir. 2003) (citing Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1407 (9th Cir. 1985)). Further, imposing sanctions against client and counsel jointly and severally is preferred since the sanctioned parties are in the best position to determine who caused the frivolous appeal to be taken. Int'l Union of Bricklayers, 752 F.2d 1401, 1407 n.8 (9th Cir. 1985).  In this Court's November 17 Order, Appellants and its counsel were held jointly and severally liable.

Sanctions are primarily imposed to deter counsel and client from future violations.  However, "[t]his deterrent effect depends in part upon the sanctioned party's ability to pay."  In re Eighty South Lake, Inc., 63 B.R. 501 (Bkrtcy. C.D. Cal. 1986).  Stella A. Havkin, counsel to David Tedder and related Appellants, filed a declaration detailing the financial burden associated with her

7

ongoing medical treatment.  Accordingly, Appellees agreed to "waive
any sanctions . . . against Ms. Havkin."  (SCSD Reply.)

    Therefore, the Court declines to award any sanctions against
Ms. Havkin.  However, Appellants and Mr. Dressler remain jointly
and severally liable for Appellees' attorneys' fees.

**IV. CONCLUSION**

    For the foregoing reasons, the Court GRANTS in part Appellees'
motion for attorneys' fees and costs.  The Court finds that
Appellants and Mr. Dressler are jointly and severally liable to
Appellees for $23,429.


IT IS SO ORDERED.


Dated: July 15, 2009

                                   DEAN D. PREGERSON
                                   United States District Judge